IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RODGER DEAN BASSETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  09-3231 |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

Plaintiff Rodger Dean Bassett appeals the Commissioner's partial denial of his application for disability insurance benefits under the Social Security Act. This Court has jurisdiction. 42 U.S.C. § 405(g). The parties have filed cross-motions for summary judgment. <u>Motion for Summary Judgment (d/e 8)</u>; <u>Defendant Commissioner's Motion for Summary Affirmance (d/e 12)</u>. For the reasons set forth below, Bassett's Motion for Summary Judgment is ALLOWED and the Commissioner's Motion for Summary Affirmance is DENIED. The unfavorable portion of the Decision of the Commissioner subject to the Plaintiff's appeal is REVERSED and

1

REMANDED for further proceedings consistent with this Opinion.

STATEMENT OF FACTS

Bassett was born on December 9, 1952. He completed high school and some subsequent welding training. He worked as a welder, material handler, and as an assistant manager at a fast food restaurant. He stopped working April 12, 2005. <u>Answer to Complaint (d/e 5)</u>, attached <u>Certified Record of Proceedings before the Social Security Administration (R.)</u>, at 140. He alleged in his application that he became disabled on that date. <u>R.</u> 105. Both before and after that date, Bassett has continued assisting his wife in operating a campground located in Florida. He worked one day a week mowing grass on a riding mower. <u>R.</u> 35.

Bassett suffers from severe neck pain and associated headaches. Bassett saw Dr. Marlene Kremer, M.D., and a chiropractor, Dr. Mario Fucinari, D.C., for pain in 2005 and 2006. <u>R.</u> 232-35, 237-337, 353-56. Bassett reported to Dr. Kremer that Davocet was not helpful for his back pain. <u>R.</u> 233-35. On November 6, 2005, Basset went to the emergency room with back pain. He reported pain in his right arm and shoulder, but he had normal grip strength bilaterally. He was given pain medication. He reported improved pain level and was released. <u>R.</u> 212-17.

In February 2006, a state agency physician Dr. Vittal Chapa, M.D., examined Bassett. Bassett could ambulate without any ambulatory needs. Dr. Chapa found no evidence of joint redness, heat, swelling or thickening. There was no evidence of paravertebral muscle spasm. Dr. Chapa found normal strength, reflexes and ability to perform manual manipulations, but a slight decrease in range of motion of the right shoulder. Dr. Chapa diagnosed Bassett with chronic cervical pain. R. 340.

On March 20, 2006, a state agency physician Delano Zimmerman, M.D., opined that Bassett had the ability to lift 20 pounds occasionally and 10 pounds frequently; stand for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; push or pull objects without limitation; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; and occasionally engage in balancing, stooping, kneeling, crouching, and crawling. R. 346-47.

In December 2006, Dr. James McKechnie, an orthopedist, examined Bassett. Dr. McKechnie found strength, reflexes, and sensation were within normal limits, but he also found weakness of grip strength, significant weakness of wrist extension, and mild diffuse weakness in all other areas. A straight leg raise test was negative. Heel and toe walking were normal.

X-rays of the cervical spine showed marked degenerative changes in the C5-6 area of the spine with prominent anterior and posterior spur formation, narrowing of the neural foramina, and spurring at C4-5 and C6-7.  R. 359. Dr. McKechnie ordered an MRI.  The MRI showed severe degenerative spondylosis throughout the cervical spine, mild spinal canal stenosis or narrowing, significant neural foraminal narrowing, and possible edema or myelomalacia.  R. 362.

On August 22, 2007, Bassett saw Dr. Kremer for pain.  Bassett reported that he could work for about 20 minutes and then needed to rest. R. 369.  On January 10, 2008, Bassett had a neurological consultation with Dr. Robert Kraus.  Bassett had limited motion in his neck, but no pain and normal range of motion in his shoulders.  Bassett reported gradual worsening of back pain since 2000.  R. 378-81.

On February 25, 2008, Dr. Kremer completed a residual functional capacity report. Dr. Kremer found that Bassett had limited range of motion of the neck.  She noted that Bassett was taking narcotic pain medication daily.  She stated that Bassett had these limitations since at least November of 2005.  Dr. Kremer opined that if Bassett engaged in sedentary work, his pain would cause him to take additional breaks from work (aside from

4

normal breaks) that would total more than one hour in an eight-hour work day. R. 386-87. She also opined that Bassett would be absent from work more than three times a month. R. 387. She opined that Bassett's functional limitations commenced in November 2005. R. 388.

The Administrative Law Judge (ALJ) held an evidentiary hearing on December 9, 2008. Bassett and his attorney appeared, as well as vocational expert Bonnie Gladden. Bassett and Gladden testified at the hearing. Bassett testified that he lived with his wife and adult son. He and his wife owned a campground in Florida. They earned about $1,100 to $1,200 per month. His wife ran the campground. He testified that he mowed the grass once a week for about six hours. R. 35. He used a riding mower for this. R. 35.

He testified that he last worked elsewhere in 2005. He was an assistant manager at a Pizza Hut restaurant. He worked at the Pizza Hut from 2000 to 2005. He quit because of the pain he was experiencing in his back and neck. R. 30. Bassett testified that, when he quit, his job performance was at about forty to fifty percent of where it had been at its peak. He also testified that he had problems controlling his temper because of the pain. R. 43-44. Bassett also worked previously in construction and

5

maintenance. R. 30-31.

Bassett testified that in a typical day, he mostly rested in a recliner. He got up periodically to walk around and stretch for a few minutes. R. 33. Bassett stated that he had a full range of motion, but, he explained, "I just can't keep doing anything." R. 34. He testified that his doctor told him that he needed neck surgery, but should wait a few years for technological advances. R. 34-35. Bassett said that he sometimes vacuumed one room, but then needed to rest for about an hour. He testified that he sometimes went to the grocery to pick up a gallon of milk, but "it hurts to push a cart around." R. 36. He folded a basket of clothes once in a while. His cooking activity was limited to "a pizza in the oven." R. 37.

Bassett stated that he watched television a couple of hours a day. He went fishing about three to four times a year in a pond located about 50 feet from his house. R. 37.

Bassett testified that he got headaches and was unable to hold his arms up for any length of time. He could only drive for about thirty minutes at a time. R. 39. Bassett testified that he did not have any trouble standing and walking except when he got dizzy spells on really bad days. R. 46. Bassett then testified that he could walk for about thirty minutes at

6

a time, but must keep his hands in his pockets while walking. R. 47.

Vocational expert Gladden then testified. The ALJ asked Gladden to assume a person of Bassett's age, education and work experience limited to light work with the additional limitations of no more than frequent gross manipulations, stooping, kneeling, crouching, crawling, and balancing, occasional reaching and overhead work, but no work requiring use of ladders, ropes, or scaffolding, and work that avoids concentrated exposure to cold, humidity, vibrations, and hazards. R. 51-52. Gladden opined that such a person could do Bassett's prior work as an assistant manager at a Pizza Hut. R. 52. Gladden also opined that such a person could work as a packing and filling machine operator, a hand packager, and as a cashier. R. 52-53. The ALJ later asked Gladden to assume that the person was limited to sedentary work with the other additional limitations listed. Gladden opined that the person could perform the packing and filling machine operator and hand packager positions. R. 60.

## DECISION OF THE ALJ

The ALJ issued her Decision on January 26, 2009. R. 10-21. The ALJ followed the five-step analysis set forth in the Social Security Administration regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920.

7

Step 1 requires that the claimant not be currently engaged in gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Such severe impairments are set forth in an appendix to the regulations referred to as the Listings. 20 C.F.R. Part 404 Subpart P, Appendix 1. The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the ALJ to determine whether the claimant is able to return to his prior work considering his residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot return to his prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must show that,

considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

The ALJ found that Bassett met his burden at Steps 1 and 2 of the Analysis. The ALJ found that Bassett had not engaged in substantial gainful activity since April 12, 2005, and that he had a severe impairment of disorders of the back. The ALJ found at Step 3 that Bassett's impairments did not meet any Listing. R. 11-12.

At Step 4, the ALJ found that, prior to Bassett's 55th birthday on December 9, 2007, Bassett had the RFC to perform light work limited to frequent stooping, crouching, crawling or balancing; frequent gross manipulations; occasional overhead work activity or reaching; but no climbing of ladders, ropes or scaffolds; and no concentrated exposure to cold, humidity, vibrations, or hazards. R. 13. The ALJ relied on Dr. Zimmerman's finding that Bassett could perform light work to support her determination. R. 16. The ALJ also relied on Dr. McKechnie's December 21, 2006, examination in which Bassett had full range of motion and no muscle atrophy, straight leg raising test was negative, and in which strength, reflexes ands sensation were all normal. R. 16. The ALJ found that

9

Bassett's medically determinable impairments could be expected to produce his symptoms, but his statements concerning the intensity of those symptoms were not credible to the extent that the statements were inconsistent with the RFC finding.  R. 14.

The ALJ, however, also found at Step 4 that Bassett's RFC changed at his 55th birthday on December 9, 2007, from light work with the limitations listed above to sedentary work with the limitations listed above.  The ALJ found that Bassett's statements regarding the severity of his condition were credible after December 9, 2007.  The ALJ found "evidence [that] the claimant's pain and lifting problems have reportedly progressively worsened, reducing his residual functional capacity to a limited range of sedentary work."  R. 17.

The ALJ also rejected Dr. Kremer's RFC February 25, 2008, report in which she found that Bassett was disabled.  The ALJ stated that no medical evidence supported Dr. Kremer's opinions.  R. 18.

Having established Bassett's RFC, the ALJ determined at Step 4 that Bassett could have returned to his prior work as a Pizza Hut assistant manager before his 55th birthday.  She also found that Bassett could perform a significant number of other jobs in the national economy at Step 5.  R. 18-

10

19.

The ALJ, however, found that on December 9, 2007, Bassett became disabled. The ALJ relied on the Medical Vocational Guidelines in the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 2 (Disability Rules). They define when a person is disabled based on age, exertional limitations, education, and work experience. The applicable Disability Rule states that an older person (age 55 or older) is disabled if he or she is limited to sedentary work, has a high school education that does not provide direct entry into skilled work, and has no transferrable skills. <u>Disability Rule 201.06</u>. The ALJ found that at age 55, Bassett met this rule, and so, became disabled on that date. <u>R.</u> 20. Prior to December 9, 2007, however, Bassett was not disabled.

Bassett appealed the ALJ's Decision. The Commissioner's Appeals Council denied Bassett's request for review. <u>R.</u> 1. Bassett then brought this action for judicial review of the Decision.

<u>ANALYSIS</u>

This Court reviews the ALJ's Decision to determine whether it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the

decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ further must articulate at least minimally his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

In this case, the Court cannot track the ALJ's Decision that Bassett's RFC changed on his 55th birthday. The ALJ does not cite medical evidence that showed that his condition worsened in December 2007. The MRI and X-rays from 2006 showed deterioration of his neck, but no subsequent test showed further deterioration. Thus, the objective medical tests did not show a change in December 2007. The ALJ does not identify a medical examination that showed that his condition materially changed in December 2007. Thus, the Court cannot track how the medical evidence supports the ALJ's finding that the RFC changed on that date.

The Cout also cannot understand the ALJ's credibility findings. The ALJ found that Bassett was credible regarding his condition after December

12

9, 2007, but not credible regarding his condition before that date. Bassett did not distinguish in his testimony at the hearing between his condition before and after he turned 55 years of age. The ALJ says that Bassett's testimony is more consistent with the medical evidence after that date, but the ALJ fails to identify the medical evidence that shows a change on that date. The ALJ has not adequately explained why Bassett's statements became more credible. The Court, therefore, cannot track the ALJ's analysis.

The date on which Bassett became limited to sedentary work is significant. A person, like Bassett, would be determined to be disabled at age 50 if he is limited to sedentary work, has a high school education that does not provide direct entry into skilled work, and has no transferrable skills. <u>Disability Rules 200.00(g) & 201.14</u>. Thus, if Bassett's RFC changed to sedentary at an earlier date, he may have become disabled on an earlier date. The ALJ needs to explain the evidence that shows that December 9, 2007, is the correct date rather than an earlier date. Because the Court cannot track the ALJ's analysis, this Decision must be reversed and remanded for further proceedings.

Bassett also argues that the ALJ failed to adequately discuss important

13

evidence. Bassett complains that the ALJ improperly summarized some of the evidence. The Court disagrees. The Court finds that ALJ's discussion of the evidence was adequate, except to the extent that the ALJ failed to discuss the evidence that supported her conclusion that Bassett's RFC changed on his 55th birthday.

Basset also argues that the ALJ erred in failing to give Dr. Kremer's opinions controlling authority. A treating physician's opinions are to be given controlling authority if the opinions are well supported by objective medical evidence and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 1527(d)(2). In this case, Dr. Kremer does not cite any medical evidence that supports her opinions that Bassett would need extra breaks on a daily basis and extra days off on a monthly basis, and the Court is not aware of any such evidence. Dr. Kremer's opinions are not supported by the findings of Dr. Chapa. The opinions are also inconsistent with the opinions of Dr. Zimmerman. Thus, the ALJ was not required to give Dr. Kremer's opinions controlling weight.

THEREFORE, the Plaintiff's Motion for Summary Judgment (d/e 8) is ALLOWED, and the Defendant Commissioner's Motion for Summary Affirmance (d/e 12) is DENIED. The unfavorable portion of the

Commissioner's Decision that is subject to the Plaintiff's appeal is reversed and remanded pursuant to sentence 4 of § 405(g). All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: July 12, 2010

    FOR THE COURT:

                                      s/ Jeanne E. Scott
                                      JEANNE E. SCOTT
                        UNITED STATES DISTRICT JUDGE